## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.: 8:17-cr-00508-CEH-CPT

WILLIAM CALVIN LOPER

_____/

## O R D E R

This cause comes before the Court upon Defendant William Calvin Loper's Verified Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 38). The Government responds in opposition (Doc. 40). Having considered the motion and being fully advised in the premises, the Court will deny the motion.

## I.  BACKGROUND

After William Calvin Loper pleaded guilty, the Court adjudicated him guilty of one count of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846, on April 4, 2018. Doc. 35 at 1. The Court sentenced Loper to 120 months of imprisonment and five years of supervised release. *Id.* at 2–3.

A 47-year-old male, Loper is currently incarcerated at FPC Pensacola. Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last accessed Nov. 2, 2021). His scheduled released date is May 8, 2025. *Id.*

Citing to 18 U.S.C. § 3582(c)(1)(A), Loper moves the Court to "modify the remainder of his sentence to home detention, probation, or supervised release." Doc.

38 at 7. When he filed the motion, he was incarcerated at FCI Coleman Low. *Id.* at 1. In addressing exhaustion of administrative remedies, Loper contends that he applied to Coleman's warden for a reduction in his sentence on April 9, 2020, which the warden denied on May 6, 2020. *Id.* at 2–3; Doc. 38-1 at 2. Loper sets forth several reasons for his requested relief. He highlights conditions at Coleman, such as documented cases of COVID-19, ineffective cleaning agents, a lack of "total compliance" with health guidelines and protocols, and the difficulty of social distancing. *Id.* at 1. Loper represents that the prison is "on quarantine protocol" as a result of COVID-19's spread. *Id.* He also highlights that he is overweight and has been diagnosed with hypertension, which he treats with four medications, and diabetes, which he treats with two medications. *Id.* at 2. He contends that these underlying conditions present a higher risk of fatality if he contracts COVID-19. *Id.* at 3–4.

Loper contends that he is a "model inmate" because he has completed a twelve-hour drug program, he has taken parenting, boating-safety, and truck-driving classes, and he has continuously been employed throughout his incarceration. *Id.* at 2, 5. He also asserts that he has received no disciplinary action during his incarceration and that he "has no public safety factors." *Id.* at 5. Finally, he states that he has a "verifiable release plan," which includes residing with his mother in Plant City, Florida, where he has a "tentative offer of employment." *Id.* at 2. He asks the Court "grant his motion for compassionate release, and modify the remainder of his sentence to home detention, probation, or supervised release" under 18 U.S.C. § 3582(c)(1)(A). *Id.* at 7.

In response, the Government first outlines generally the response of the Bureau of Prisons to COVID-19, including the BOP's creation of a group to develop policies in consultation with experts at the Centers for Disease Control.[1] Doc. 40 at 1–8. Next, the Government argues that the Court must deny Loper's alternative request to place him on home confinement because the Court lacks authority to order that relief. *Id.* at 8–10. Proceeding to exhaustion of administrative remedies, the Government asserts that Loper failed to exhaust his administrative remedies because he did not appeal the warden's denial of his request for compassionate release. *Id.* at 13.

Further, the Government contends that Loper has not demonstrated "extraordinary and compelling reasons" under one of the categories set forth in U.S.S.G. § 1B1.13, cmt. n.1. *Id.* at 13–18. The Government argues that neither potential COVID-19 exposure nor COVID-19, by itself, qualifies as an extraordinary and compelling reason. *Id.* at 14–15. Although conceding that BOP records and the Pre-Sentence Report establish that Loper suffers from obesity, diabetes, and hypertension, the Government argues that Loper fails to provide sufficient explanation as to how these conditions will prevent him from providing self-care or how the low

---

[1] The Centers for Disease Control's correctional facility guidance includes the following recommendations: enhanced cleaning and disinfecting hygiene practices; strategies limiting transmission from visitors; social-distancing strategies; infection control, such as recommended personal protective equipment and potential alternatives in the event of shortages; healthcare evaluation for those individuals with suspected COVID-19; and considerations for those individuals who face increased risk for severe illness from COVID-19. Centers for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#Overview (last accessed Nov. 3, 2021).

rate of COVID-19 at Coleman, in comparison to where he proposes to reside, presents an extraordinary and compelling reason for his release. *Id.* at 16–17. Based on the number of reported cases at Coleman at the time when the Government responded to the motion, together with Coleman's COVID protocols, the Government also claims that Loper would be safer at Coleman than in the community, "where checks and safeguards are being progressively relaxed through the phased reopening of businesses and crowded events." *Id.* at 17–18.

Finally, the Government argues that the § 3553(a) factors weigh against granting Loper's requested reduction. *Id.* at 18–19. To that end, the Government contends that Loper would pose a danger to the public if the Court releases him. *Id.* at 19. The Government highlights that Loper's criminal history dates back to 1993, with the conduct giving rise to the conviction in this action involving methamphetamine trafficking. *Id.* at 19–20. The Government also points out that Loper's drug use was extensive and, despite the recommendation for him to participate in the RDAP program, he has not shown that he has completed that program. *Id.* at 20. These grounds, the Government argues, militate against his release. *Id.* at 20–21.[2]

## II.  LEGAL STANDARDS

Under 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district

---

[2] Afterwards, Loper filed a "Motion for Status Update as to Movant's Motion for Compassionate Release," in which he "asks this Court to provide the status of his Motion for Compassionate Release." Doc. 44 at 1. Because the Court now rules upon Loper's motion, the Court will deny this later motion as moot.

court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotation marks omitted). Limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release. The statute provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure . . . .

18 U.S.C. § 3582(c)(1).

Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (A) the inmate has either exhausted his or her administrative appeal rights of the BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (B) the inmate has established "extraordinary and compelling reasons" for the requested sentence reduction; and (C) the reduction is consistent with the Sentencing Commission's policy statements. *Id.* Courts must consider the § 3553(a) factors, as applicable, as part of the analysis. *See id.* § 3582(c)(1)(A).

The defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (providing that defendant bears the burden of establishing a reduction of sentence is warranted under § 3582(c) due to a retroactive guideline amendment); *United States v. Heromin*, No. 8:11-cr-550-VMC-SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (citing *Hamilton* in the context of a § 3582(c) motion for compassionate release).

### III.  DISCUSSION

### A. Loper Exhausted His Administrative Remedies

6

Loper exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies with the BOP prior to the filing of a motion for compassionate release. "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies *or* 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020) (emphasis in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). In other words, "§ 3582(c)(1)(A) gives a defendant seeking compassionate release 'the option to take his claim to federal court within 30 days of submitting a request to the warden, no matter the appeals available to him." *Id.* at 1334 (internal alterations omitted).

Here, Loper filed a request for a sentence reduction with the warden of Coleman on April 9, 2020. The warden denied Loper's request on May 6, 2020. Doc. 38 at 3. The BOP did not move on Loper's behalf for a reduction, and Loper filed the motion more than 30 days after the warden's receipt of his request. The Government's argument that the Court should not entertain Loper's motion absent an appeal or after a 30-day lapse from that appeal misreads the statute. *See Smith*, 482 F. Supp. 3d at 1224. Therefore, Loper exhausted his administrative remedies.

### B. Loper Does Not Establish Extraordinary and Compelling Reasons

Loper fails to demonstrate "extraordinary or compelling reasons" for his requested reduction. Loper bears the burden of establishing that compassionate release is warranted. *Hamilton*, 715 F.3d at 337. Section 3582(c)(1), as amended by the First

Step Act, provides, in relevant part, that a court may modify a term of imprisonment once it has been imposed in any case where, upon a defendant's motion, after considering the factors set forth in § 3553(a) to the extent that they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[3] 18 U.S.C. § 3532(c)(1)(A); *see United States v. Giron*, ___F.4th___, 2021 WL 4771621, at \*3 (11th Cir. Oct. 13, 2021) (identifying with brackets the three findings needed under § 3582(c)(1)(A) for compassionate release).

Thus, Loper must demonstrate that "extraordinary and compelling reasons" warrant his requested reduction. The application notes for Section 1B1.13—a policy statement from the Sentencing Commission concerning § 3582(c)(1)(A)—specify "four general categories of 'extraordinary and compelling reasons': medical, age, family, and a 'catch-all other reasons' category." *Giron*, 2021 WL 4771621, at \*1 (citing *United States v. Bryant*, 996 F.3d 1243, 1249–50 (11th Cir. 2021)). Section 1B.13 is an applicable policy statement governing all motions filed—not only those filed by the Director of the BOP—under § 3582(c)(1)(A). *Bryant*, 996 F.3d at 1262. As such, a district court may not reduce a sentence under § 3582(c)(1)(A), unless a reduction is

---

[3] Another basis for modifying a term of imprisonment is where "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imposed, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)." 28 U.S.C. § 3532(c)(1)(A)(ii). Here, Loper is 47 years-old, and he has not served at least 30 years of incarceration. Loper does not argue to the contrary.

8

consistent with 1B1.13. *Id.* If the court finds that an extraordinary and compelling reason exists, "it must also determine that '[t]he defendant is not a danger to the safety of any other person or to the community' before granting compassionate release." *Giron*, 2021 WL 4771621, at *1 (quoting U.S.S.G. § 1B1.13(2)).

### 1. *Loper's Obesity, Diabetes, and Hypertension*

Loper's obesity, diabetes, and hypertension do not qualify as an extraordinary and compelling reason for his release. The "medical" category under § 1B1.13A provides, in relevant part, that a defendant's medical condition may provide an extraordinary and compelling reason to support a reduction in sentence when the defendant (1) suffers "from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)"; or (2) suffers "from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A). Stable, controlled medical conditions do not qualify as an extraordinary and compelling reason for a prisoner's compassionate release under § 1B1.13. *See United States v. Wedgeworth*, 837 F. App'x 738, 739–40 (11th Cir. 2020) (affirming the district court's finding of no extraordinary and compelling reason for a defendant suffering from obesity and chronic hypertension because those conditions were not terminal and did not substantially limit the prisoner's ability to provide self-care); *United States v. Alexander*, No. 3:17-cr-212-MMH-JBT, 2020 WL 7490088, at *2 (M.D. Fla. Dec. 21, 2020) (denying a defendant's motion for compassionate release where the defendant, who suffered from diabetes, high blood

pressure, and "mental problems," acknowledged that he was prescribed medication to manage those conditions and no evidence demonstrated that his conditions posed a risk of death or grave harm or otherwise impaired his ability to provide self-care in the prison).

Here, no evidence shows that Loper's obesity, diabetes, and hypertension constitute terminal illnesses, such as serious or advanced illnesses with end-of-life trajectories, or serious physical or mental conditions that substantially impair his ability to provide self-care within the prison and from which Loper is not expected to recover. Instead, he recognizes that he takes medications to control his hypertension and diabetes. And the Eleventh Circuit has affirmed a district court's finding that obesity and hypertension do not qualify as an extraordinary and compelling reason for release. *See Wedgeworth*, 837 F. App'x at 739–40. As such, Loper fails to establish that his obesity, diabetes, and hypertension qualify as an extraordinary and compelling reason for his requested reduction.

### 2. Remaining Reasons

Loper offers other reasons for his requested reduction, none of which fall under the "age" or "family" categories of "extraordinary and compelling reasons." As such, the Court turns to the catch-all category. Loper similarly fails to demonstrate "extraordinary and compelling reasons" for a reduction under this category.

The fourth category, described as a "catch-all" provision, applies when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the

10

reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, cmt. n.1(D). "This language preclude[s] district courts from finding extraordinary and compelling reasons within the catch-all provision beyond those specified by the Sentencing Commission in Section 1B1.13." *Giron*, 2021 WL 2021 WL 4771621, at *2 (citing *Bryant*, 996 F.3d at 1263–65). Indeed, the Sentencing Reform Act "did not put district courts in charge of determining what would qualify as extraordinary and compelling reasons that might justify reducing a prisoner's sentence." *Bryant*, 996 F.3d at 1249. Thus, courts lack the freedom to define "extraordinary and compelling reasons." *Id.* at 1264.

Loper's argument that conditions at Coleman warrant his release is unavailing. Loper is now incarcerated at FPC Pensacola. FPC Pensacola has no confirmed COVID-19 cases among inmates and only two confirmed COVID-19 cases among staff. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed Nov. 3, 2021). 325 prisoners and 54 staff members at FPC Pensacola are fully vaccinated. *Id.* Not one inmate has died from COVID-19 at FPC Pensacola. *Id.* Loper does not point to any determination by the Director of the BOP that the conditions at Coleman or the conditions at FPC Pensacola constitute "extraordinary and compelling reasons" under the catch-all provision. Similarly, although Loper contends that his underlying medical conditions present a higher risk of fatality if he contracts COVID-19, he fails to point to any determination by the Director of the BOP that a greater risk of fatality upon possible contraction constitutes an "extraordinary and compelling reason."

11

Therefore, Loper fails to demonstrate "extraordinary and compelling reasons" for his requested reduction.

## IV.   CONCLUSION

Loper exhausted his administrative remedies, but he fails to demonstrate "extraordinary and compelling reasons" for his requested reduction. Because he fails to establish "extraordinary and compelling reasons" for his requested reduction, the Court need not analyze the § 3553(a) factors. *Giron*, 2021 WL 4771621, at *3 ("When denying a request for compassionate release, a district court need not analyze the § 3553(a) factors if it finds either that no extraordinary and compelling reason exists or that the defendant is a danger to the public."); *see Bryant*, 996 F.3d at 1254 ("So to apply 1B1.13, a court simply considers a defendant's specific circumstances, decides if he is dangerous, and determines if the circumstances meet any of the four reasons that could make him eligible for a reduction. If he is dangerous or if his circumstances do not match any of the four categories, then he is ineligible for a reduction. If he is not dangerous and his circumstances fit into an approved category, then he is eligible, and the court moves on to consider the Section 3553(a) factors in evaluating whether a reduction should be granted.").

Finally, to the extent that Loper asks for home confinement, the Court denies that request. Generally, once a court imposes a sentence, the BOP is solely responsible for determining an inmate's place of incarcerate to serve that sentence. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("A sentencing court can recommend that the BOP place an offender in a particular facility or program . . . . [b]ut decisionmaking

authority rests with the BOP."); 18 U.S.C. §3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment . . . ."); *see also McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."). Loper provides no legal authority to show that the Court may order home confinement here. Thus, to the extent that he seeks home confinement, the Court denies that request.

Accordingly, it is hereby **ORDERED**:

1. Defendant's Motion for Compassionate Release or Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 32) is **DENIED**.

2. Defendant's Motion for Status Update as to Movant's Motion for Compassionate Release (Doc. 44) is **DENIED AS MOOT**.

**DONE AND ORDERED** in Tampa, Florida on November 3, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented parties, if any

13